IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FILED JAN 28 2011
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

MARIE N. ZE-ZE                     )
                                   )
    Plaintiff,             )
                                   )
v.                                 )    1:10cv959(LMB/TRJ)
                                   )
KAISER PERMANENTE MID-ATLANTIC     )
STATES REGIONS, INC.               )
                                   )
    Defendant.             )

## MEMORANDUM OPINION

Before the Court is the defendant's [Partial] Motion to Dismiss for Failure to State a Claim and for Lack of Jurisdiction [Dkt. No. 3]. For the reasons stated in this Memorandum Opinion, that motion will be granted.

## I. Background

The plaintiff in this civil action, Marie N. Ze-Ze ("Ze-Ze"), worked as a Clinical Assistant at a Springfield, Virginia clinic operated by the defendant, Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc. ("Kaiser")[1], from early January 1989 to February 20, 2008. See Pl.'s Compl. at 1.[2] Plaintiff is an African-American and a native of Cameroon, Africa. See id. She is

---

[1] Plaintiff's pro se Complaint identifies "Kaiser Permanente Mid-Atlantic States Region, Inc." as the defendant in this action, but defendant has indicated that the proper party is actually Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc. See Def.'s Mot. to Dismiss at 1, n.1.

[2] The Court will cite to plaintiff's pro se Complaint by page number because the paragraphs contained therein are not numbered.

also infected with the hepatitis C virus, allegedly as a result of several incidents in which she was accidentally stuck by "contaminated needles" while assisting on surgical skin procedures. Id. at 2.[3]

On August 25, 2010, Ze-Ze filed a pro se Complaint alleging that she was forced to resign from her position and otherwise discriminated against because of her race and national origin in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.; her genetic information in violation of the Genetic Information Non-Discrimination Act of 2007 ("GINA"), 42 U.S.C. § 2000ff et seq.; her age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.; and her disability in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq.

Specifically, the Complaint alleges a pattern of harassment on the basis of Ze-Ze's race and health condition. For example, plaintiff asserts that in 1999, a Kaiser Clinical Coordinator, Pam Winder, made a "harassing phone call" to her while she was ill. Pl.'s Compl. at 7-8. The Complaint further alleges that Kaiser discriminated against Ze-Ze in issuing evaluations of her work that "have generally been negative for the most part." Id. at 4.[4]

---

[3] According to the Complaint, those incidents occurred on March 29, 2000, December 3, 2001, May 5, 2004, and September 7, 2006.

[4] Ze-Ze takes particular issue with her evaluations from 1991 to 1993, 1997 to 2001, and 2006 to 2007. Pl.'s Compl. at 4-8.

2

Plaintiff also contends that she was harassed while on bereavement leave in April 2007, and that as recently as February 2008, a similarly-situated Caucasian co-worker, Vicki Catlin, was treated more favorably than her because of her race. See id. at 1-2, 8. In particular, the Complaint alleges that Catlin, who works in the Department of Dermatology, made a number of mistakes and had certain "inadequacies," but that she received preferential treatment and "management covered all that because of her Race." Id. at 1-2.

Ze-Ze also alleges that she was improperly passed over for a May 2002 promotion to the position of Clinical Assistant II in favor of younger employees, and that from 2002 until at least 2006, she was improperly denied "differential payments" when she performed the duties of an absent Clinical Assistant II. Id. at 8-9.[5] In addition, plaintiff raises a claim for discrimination in the imposition of various disciplinary sanctions against her, including a "Corrective Action level 2 for unsatisfactory customer service," issued on October 14, 2004, and a "Developmental Plan" imposed on her in September 2007. Id. at 5.

Finally, the crux of plaintiff's Complaint is that several white Kaiser supervisors (Mary Ward, Administrator of the Kaiser Springfield Medical Center; Susan Lutes, Business Manager; and Nancy Stuehler, Clinical Coordinator) discriminated against her on the

---

[5] The Complaint does not specify when Kaiser allegedly failed to make the differential payments, but a letter from Ze-Ze to Kaiser dated July 17, 2006, which was attached to the Complaint, indicates that Ze-Ze believed that Kaiser failed to make the payments starting in 2002.

3

basis of her race and health condition by placing her on administrative leave on February 13, 2008, and by "coerc[ing]" her to resign on February 20, 2008. Id. at 2-3, 10. Kaiser's stated reason for placing Ze-Ze on administrative leave and subsequently requesting her resignation under threat of termination was that it had received reports and complaints that Ze-Ze was, inter alia, being rude to Kaiser members, not promptly informing them of waiting times, and not returning their phone calls. Id. at 10. Ze-Ze's Complaint, however, alleges that her termination was motivated by unlawful discrimination and that since her termination, "a young White Clinical Assistant has replaced [her]." Id.

On August 25, 2008, Ze-Ze filed a Complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based only on her race and national origin. See Ex. 21 to Pl.'s Compl. (Aug. 25, 2008 Charge of Discrimination). In that EEOC Complaint, plaintiff did not check off the boxes for "age," "disability," or "other" discrimination. See id. In the narrative section, where Ze-Ze was asked to detail the particulars of her charge, she wrote:

> I was hired by Respondent on 1/4/1989 as a Clinical Assistant. Since 2006, I have been subjected to differential treatment by a White co-worker. I complained, on a daily basis, beginning in 2006 through February 2008, of the differential treatment, to my Supervisor, Veronica Taylor, Black. To my knowledge, Ms. Taylor has submitted my complaints to Administrator, Mary Ward, White, but no disciplinary action has been taken against the co-worker. On 2/13/2008, I was placed on administrative leave, for customer complaints, by Ms. Ward, Business Manager Susan Lutes, White, and Clinical Coordinator Nancy

4

> Stuehler, White. I objected to being placed on
> administrative leave because the complaints were not
> about me, but another employee who had my same name.
> On 2/20/2008, I was informed that if I did not resign,
> I would face termination. The decision for this action
> was made by Ms. Ward, Ms. Lutes, and Ms. Stuehler.
> Since my resignation, I have complained, in writing, to
> CEO George Halvorson and President Marilyn Kawamuta, I
> stated that I felt discriminated against based on my
> race and national origin. On 6/25/2008, I met with VP
> of Human Resources Beth Jaeger, White, and Director of
> Compliance Ms. Adkins, White. To my knowledge, to
> [sic] action has been taken regarding my complaint.
>
> I feel I have been discriminated against based on my
> race, Black, and national origin, Africa, in violation
> of Title VII of the Civil Rights Act of 1964, as
> amended.

Id. On July 12, 2010, the EEOC dismissed plaintiff's Charge of Discrimination and issued her a Notice of Right to Sue letter. See id.; see also Def.'s Answer ¶ 11. Ze-Ze timely filed the instant Complaint on August 25, 2010.[6]

On December 15, 2010, defendant filed a Motion to Dismiss for Failure to State a Claim and for Lack of Jurisdiction [Dkt. No. 3]. Defendant argues that all of plaintiff's claims under GINA, the ADEA, and the ADA should be dismissed for lack of subject matter jurisdiction because plaintiff failed to specifically plead and exhaust those claims before the EEOC. See Mem. in Supp. of Def.'s Mot. to Dismiss at 2. Kaiser also contends that Ze-Ze's claims under GINA fail to state any plausible entitlement to relief, and that many of her claims under Title VII should be dismissed as

---

[6] Plaintiff originally filed her Complaint pro se, but she is now represented by counsel.

time-barred. Id. at 3. The parties have waived oral argument on defendant's motion.

## II. Standard of Review

Under Fed. R. Civ. P. 12(b)(6), a complaint should not be dismissed "unless it appears certain that [plaintiff] can prove no set of facts that would support his claim and would entitle him to relief." Smith v. Sydnor, 184 F.3d 356, 361 (4th Cir. 1999). The Court must accept all of the complaint's well-pleaded allegations as true and view them in the light most favorable to the plaintiff. Smith, 1184 F.3d at 361. However, that requirement applies only to facts, not to legal conclusions. Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). In addition, "if the well-pled facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]'- that the pleader is entitled to relief. Id. at 1950. "Factual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all of the allegations in the complaint are true." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Accordingly, the Supreme Court has held that to satisfy the pleading requirements of Fed. R. Civ. P. 8(a), a complaint must include a plausible statement of the claim showing that the pleader is entitled to relief and providing the defendant with fair notice of "what . . . the claim is and the ground upon which it rests." Id. at 555. "Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." Id. at 557. Rather, "only a complaint that states a *plausible* claim for relief survives a motion to dismiss." Iqbal, 129 S. Ct. at 1950 (emphasis added); see also Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 259 (4th Cir. 2009) (quoting Iqbal).

Moreover, under Fed. R. Civ. P. 12(b)(1), the plaintiff bears the burden of persuasion to establish subject matter jurisdiction, and must prove by a preponderance of the evidence that jurisdiction is proper in federal court. See, e.g., Stawn v. AT&T Mobility, 530 F.3d 293, 296 (4th Cir. 2008); Jones v. Am. Postal Workers Union, 192 F.3d 417 (4th Cir. 1999). The district courts of the United States are courts of limited subject matter jurisdiction, possessing only the jurisdiction granted to them by the United States Constitution and by federal statutes. Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005); Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Accordingly, when a district court lacks subject matter jurisdiction over an action, the action must be dismissed. Arbaugh v. Y & H Corp., 546 U.S. 500, 506-07 (2006).

### III. Discussion

#### A. ADA, ADEA, and GINA Claims

All of plaintiff's claims under the ADA, ADEA, and GINA must be dismissed for lack of subject matter jurisdiction because

plaintiff failed to adequately plead and exhaust them before the EEOC.

The ADA, ADEA, and GINA all require a plaintiff to file a charge of discrimination with the EEOC or with a state's fair employment practices agency before filing a complaint in federal court. See 42 U.S.C. § 12117(a); 29 U.S.C. § 626(f); 42 U.S.C. § 2000ff-6. Such a charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). The Fourth Circuit has held that such exhaustion requirements are designed to "serve the primary purposes of notice and conciliation." Chacko v. Patuxent Inst., 429 F.3d 505, 510 (4th Cir. 2005) (describing the importance of exhaustion under 42 U.S.C. § 2000e-5(f)(1) in Title VII, which is explicitly incorporated into both the ADA and GINA). Exhaustion is therefore a "jurisdictional prerequisite," and "actions instituted without this prerequisite must accordingly be dismissed." Mickel v. S.C. State Emp't Serv., 377 F.2d 239, 242 (4th Cir. 1967) (internal citations and quotations omitted). Moreover, "[t]he scope of a plaintiff's right to file a federal lawsuit is determined by the [EEOC] charge's contents," and only those discrimination claims specifically stated in the charge or developed during reasonable investigation of the original administrative complaint may be maintained in a subsequent lawsuit. Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009).

In this case, although Ze-Ze filed a charge of discrimination with the EEOC, that charge did not assert that Kaiser discriminated against her on the basis of her age, disability, or genetic information. Rather, Ze-Ze's EEOC complaint only asserted claims for unlawful racial and national origin discrimination under Title VII, and Ze-Ze did not check the available boxes for "age," "disability," or "other" discrimination. See Ex. 21 to Pl.'s Compl. (Aug. 25, 2008 Charge of Discrimination).[7] As a result, there is simply nothing in the EEOC complaint that would put Kaiser or the EEOC on notice that Ze-Ze was alleging anything other than race and national origin discrimination. In fact, plaintiff concedes that because "her Charge of Discrimination failed to identify those specific categories [age, disability, or genetic discrimination] . . . those claims may be subject to dismissal by the Court in this matter." See Mem. in Supp. of Pl.'s Response Opposing Def.'s Mot. to Dismiss ("Pl.'s Opp.") at 4. Accordingly, because Ze-Ze failed to properly exhaust her ADA, ADEA, and GINA claims, this Court lacks subject matter jurisdiction over them, and they will be dismissed.

B. Title VII Claims

Kaiser also argues that the majority of Ze-Ze's Title VII claims should be dismissed because they are time-barred. To be

---

[7] The Court references the exhibits attached to plaintiff's pro se Complaint according to the numbers assigned to them during electronic docketing, because plaintiff did not number the exhibits.

timely, a charge of discrimination under Title VII must be filed with the EEOC within 300 days after the alleged discriminatory act occurs. See 42 U.S.C. § 2000e-5(e)(1); Edelman v. Lynchburg Coll., 300 F.3d 400, 404 (4th Cir. 2002). In this case, plaintiff filed her EEOC charge on August 25, 2008, meaning that any claims that accrued before October 30, 2007 fall outside of the 300-day window.

Aside from her termination or forced resignation on February 20, 2008, the bulk of plaintiff's allegations pre-date the October 30, 2007 statute of limitations date and are therefore time-barred. Indeed, plaintiff's only argument that her claims are still timely is that the "continuing violation" doctrine is applicable to her claims, "from at least January 1, 2006 to February 20, 2008." See Pl.'s Opp. at 4. That doctrine provides, in relevant part, that:

> If one act in a continuous history of discriminatory conduct falls within the charge filing period, then acts that are plausibly or sufficiently related to that act which fall outside the filing period may be considered for purposes of liability even though these acts cannot serve as the basis for an EEOC charge.

Lewis v. Norfolk S. Corp., 271 F. Supp. 2d 807, 812 (E.D. Va. 2003).

However, in this case, plaintiff's untimely claims are not subject to revival under the continuing violation doctrine, in light of the principles established in Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002). In Morgan, the Supreme Court held that discrete acts of discrimination cannot be saved by the continuing violation doctrine, and that such discrete acts "are not actionable if time-barred, even when they are related to acts

alleged in timely filed charges." Id. at 113. In Ze-Ze's case, although her pro se Complaint makes stray references to ongoing harassment, her ultimate theory of recovery is not that Kaiser created a hostile work environment, but rather that it committed several discrete acts of discrimination against her by failing to promote her, failing to make "differential payments" to her for work that she performed, disciplining and evaluating her more harshly than her Caucasian colleagues, and eventually placing her on administrative leave and asking her to resign. Those are all classic examples of discrete acts of alleged discrimination. See Lewis, 271 F. Supp. 2d at 813 (finding that a discriminatory job transfer, denials of promotions, denied pay increases, and negative performance evaluations are discrete discriminatory acts). However, with the exception of the administrative leave and forced resignation in February 2008, those claims are all time-barred, and the continuing violation doctrine cannot change that simple fact.[8]

Accordingly, any and all claims in the Complaint that accrued before October 30, 2007 will be dismissed as untimely. That includes, inter alia:

---

[8] Indeed, even if the Court were to consider the alleged acts of harassment described in the Complaint, such as the 1999 phone call and the alleged April 2007 harassment while plaintiff was on bereavement leave, as ongoing violations rather than as discrete acts, the continuing violation doctrine cannot save them. Morgan requires that for the continuing violation doctrine to be successfully invoked, any time-barred claims must relate back to actionable harassment that took place within the statute of limitations period. However, in this case, the Complaint does not allege any actionable harassment that accrued on or after October 30, 2007.

(1) Defendant's negative evaluations of plaintiff from 1991 to 1993 and 1997 to 2001, and in 2006;

(2) The 1999 "harassing phone call" from Pam Winder;

(3) The May 2002 non-promotion of plaintiff to the position of Clinical Assistant II;

(4) The alleged failure of Kaiser to make "differential payments" to plaintiff from 2002 to 2006;

(5) The October 14, 2004 "Corrective Action level 2 for unsatisfactory customer service";

(6) The alleged April 2007 harassment while plaintiff was on bereavement leave; and

(7) The September 2007 decision to place plaintiff on a "Developmental Plan."

Although plaintiff may be able to introduce evidence of those events at trial to explain the history of her employment at Kaiser and to demonstrate any alleged discriminatory animus on the part of the defendant, she is not entitled to any damages recovery for those actions, or for any other acts that pre-date October 30, 2007.

### IV. Conclusion

For the reasons stated above, the defendant's [Partial] Motion to Dismiss For Failure to State a Claim and for Lack of Jurisdiction [Dkt. No. 3] will be granted by an Order to be issued with this Memorandum Opinion.

Entered this 28th day of January, 2011.

/s/ *[signature]*
Leonie M. Brinkema
United States District Judge

Alexandria, Virginia

12