IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

MARIE N. ZE-ZE )
)
    Plaintiff, )
)
v. ) 1:10cv959 (LMB/TRJ)
)
KAISER PERMANENTE MID-ATLANTIC )
STATES REGIONS, INC. )
)
    Defendant. )

FILED JUN 29 2011

## MEMORANDUM OPINION

Before the Court is the defendant's Motion for Summary Judgment [Dkt. No. 32]. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before us, and argument would not aid the decisional process. For the reasons stated in this Memorandum Opinion, defendant's motion will be granted, and summary judgment will be entered in favor of the defendant.

## I. Background

This civil action involves a claim of employment discrimination, arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"). The plaintiff, Marie N. Ze-Ze ("Ze-Ze"), is a native of Cameroon, Africa who worked as a Clinical Assistant at a Springfield, Virginia clinic operated by the defendant, Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc. ("Kaiser")[1], from early January 1989

---

[1] In her Complaint, which was originally filed pro se, plaintiff identified "Kaiser Permanente Mid-Atlantic States

through February 2008. See Def.'s Mot. for Summ. J. at Ex. A (Ze-Ze Dep.) at 25:20-26:20. During the particular time period at issue in this civil action, 2007 through 2008, Ze-Ze worked in Kaiser's Dermatology Department, where her duties as a Clinical Assistant[2] included, inter alia, greeting patients, scheduling and confirming appointments, transporting patients in wheelchairs to treatment areas, coordinating the flow of patients into treatment areas, notifying medical and nursing staff if a patient required immediate attention, advising patients of delays, and, as appropriate, providing information and instructions to patients as directed by the medical and nursing staff. Id. at 28:18-29:2, 35:13-38:18; see also id. at Ex. 3.

On February 21, 2008, Ze-Ze was asked to resign from her position as a Clinical Assistant in lieu of being fired or demoted. Id. at 62:16-63:14. The request for plaintiff's resignation followed several incidents and patient complaints involving Ze-Ze throughout February 2008. See, e.g., id. at Ex. B (Nancy Stuehler Dep.) at Ex. 5 (detailing a patient complaint

---

Region, Inc." as the defendant in this action. However, defendant has indicated that the proper party is actually Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc. See Mem. in Supp. of Def.'s Mot. for Summ. J. at 1 n.1.

  [2] Plaintiff was also identified as holding the position of "Medical Assistant" at certain times during her tenure at Kaiser, but her job duties remained the same under both job titles. See id. at 27:16-18:12. Accordingly, for ease of comprehension, the Court will refer to Ze-Ze's position as "Clinical Assistant" through this Memorandum Opinion.

regarding an incident that occurred on February 8, 2008). Moreover, at the time that plaintiff was asked to resign, she was already on a Level 3 Corrective Action Plan that required her to take a "customer service class and a communication (confronting difficult issues) class." Id. at Ex. A (Ze-Ze Dep.) at Ex. 7.

The immediate incident that precipitated the request for plaintiff's resignation occurred on February 11, 2008, when plaintiff was stationed in the lobby on the first floor of the Springfield Medical Center, providing patients with directions to the pharmacy. Id. at 108:3-109:3. A patient who had just seen her doctor on the third floor and who needed to fill a prescription told Ze-Ze that she needed a place to rest because she had a fever, was feeling ill, and did not want to go home and return later for her prescription. Id. at 53:17-57:19, 108:7-109:19. Plaintiff noticed that the patient felt hot to the touch, and that there was a long line at the pharmacy with no open seating available in the lobby for patients to sit while waiting for their prescriptions to be filled. See id. at 57:20-58:2, 108:10-14. Accordingly, Ze-Ze put the patient in an exam room located in a part of the Dermatology Department that was closed, had the patient lie down on the exam table, covered the patient with an exam sheet, closed the door, and left. Id. at 55:6-58:14.

Ze-Ze did not inform any doctor in the Dermatology Department that she had put the patient in the exam room. Id. at

3

59:16-60:2. In fact, plaintiff did not tell *anyone* in the Dermatology Department that she was bringing the patient to the exam room. Id. at 60:3-7. The patient was discovered later that day when one of plaintiff's supervisors, Nancy Stuehler ("Stuehler") stumbled upon her while inspecting the Dermatology Department along with Susan Lutes ("Lutes"), the business operations manager. See id. at Ex. C (Stuehler Decl.) ¶ 7. Stuehler noticed that the patient was warm to the touch, that her pulse was elevated, and that she had been seen by the Internal Medicine Department earlier that day for an illness. Id. ¶ 8. Stuehler accordingly called the clinical coordinator for the Internal Medicine Department, and had her come up to the Dermatology Department with a wheelchair to take the patient back to the Internal Medicine Department for further evaluation. Id.

Once the patient had been taken to the Internal Medicine Department, Stuehler asked to speak with Ze-Ze, and explained to the plaintiff that she was concerned that plaintiff had put the patient in danger by failing to tell anyone that the patient was in the exam room. Id. ¶ 9. She then placed Ze-Ze on paid administrative leave, which was converted to medical leave several days later when Ze-Ze notified her supervisor that she was experiencing medical issues. Id.; see also id. at Ex. A (Ze-Ze Dep.) at 62:7-15.

After the February 11, 2008 incident, Stuehler consulted with Lutes, Mary Ward, who was then the Medical Center

4

Administrator for Kaiser's Springfield and Burke, Virginia Medical Centers, and Charlene Yates, who is a Human Resources representative for Kaiser. Id. at Ex. C (Stuehler Decl.) ¶ 10. Stuehler decided that Ze-Ze should be discharged, and Ward, Yates, and Lutes all agreed. Id. Ward, however, suggested that Stuehler might want to give plaintiff an opportunity to become an on-call greeter, and Stuehler agreed with that suggestion. See id. Accordingly, Stuehler met with Ze-Ze on February 21, 2008, and gave her three options: (1) resign from her position as a Clinical Assistant and accept a position as an on-call greeter; (2) resign from Kaiser altogether; or (3) be discharged. See id. at Ex. B (Stuehler Dep.) at 28:22-29:11. Ze-Ze initially chose to resign from her position and become an on-call greeter, but she then resigned from Kaiser altogether by a letter dated April 17, 2008. See id. at Ex. A (Ze-Ze Dep.) at Ex. 1.[3]

Plaintiff filed a Complaint with the Equal Employment Opportunity Commission ("EEOC") on August 25, 2008, alleging that Kaiser's request for her resignation constituted unlawful discrimination based on her race and national origin. See Pl.'s Compl. at Ex. 21. On July 12, 2010, the EEOC dismissed plaintiff's Charge of Discrimination and issued her a Notice of

---

[3] It appears from the record that although Ze-Ze initially accepted the option to become an on-call greeter, she never actually worked in that position and instead was on administrative or medical leave from February 11, 2008 until she resigned on April 17, 2008. Id.

Right to Sue letter. See id. at Ex. 22; see also Def.'s Answer ¶ 11. Ze-Ze then timely filed her Complaint before this Court on August 25, 2010,[4] alleging claims for discrimination under Title VII; the Genetic Information Non-Discrimination Act of 2007 ("GINA"), 42 U.S.C. § 2000ff et seq.; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.; and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq.

By an Order dated January 28, 2011, the Court dismissed plaintiff's GINA, ADEA, and ADA claims for lack of subject matter jurisdiction because plaintiff had failed to properly exhaust those claims before the EEOC, and further dismissed some of plaintiff's Title VII allegations as time-barred. See Dkt. No. 23 (January 28, 2011 Order). Accordingly, the Court ruled that only plaintiff's Title VII claims for alleged acts of racial or national origin discrimination occurring on or after October 30, 2007 remained viable. Id.

At the close of discovery, defendant filed the instant Motion for Summary Judgment [Dkt. No. 32], arguing that all remaining claims in this civil action should be dismissed because there are no genuine issues of material fact, and no reasonable jury could find in plaintiff's favor.

---

[4] Ze-Ze's Complaint was initially filed pro se, but she is now represented by counsel.

## II. Standard of Review

Summary judgment is appropriate where the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P 56(c). A genuine issue of material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 247-48 (1986). In resolving a motion for summary judgment, the Court must view the record in the light most favorable to the nonmoving party. See Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002). However, "the mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Anderson, 477 U.S. at 252; see also Othentec Ltd. v. Phelan, 526 F.3d 135, 140 (4th Cir. 2008).

Moreover, "the mere existence of *some* alleged factual dispute" cannot defeat a motion for summary judgment; the dispute must be both "material" and "genuine," meaning that it must be capable of changing the outcome of the lawsuit. Bryant, 288 F.3d at 132. Accordingly, a nonmoving party cannot "create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). Rather, to survive a motion for summary

judgment, a nonmoving party who bears the burden of proof at trial must submit sufficient, credible evidence to establish a reasonable finding in his favor as to each essential element of his claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

### III. Discussion

Summary judgment is appropriate in defendant's favor on Ze-Ze's Title VII claims because the evidence is insufficient as a matter of law to establish a claim for unlawful employment discrimination based on racial, ethnic, or national origin animus. Rather, the undisputed material facts establish that plaintiff was removed from her position as a Clinical Assistant for cause.

**A. Framework for Review**

Because she lacks any direct evidence of racial or national origin discrimination, plaintiff proceeds under the indirect "burden-shifting" framework laid out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under that framework, a plaintiff must first establish a prima facie case of unlawful discrimination by showing: (1) that she was a member of a protected racial, ethnic, or other group; (2) that she experienced an adverse employment action; (3) that at the time of the adverse employment action, she was performing her job at a level that met her employer's legitimate expectations; and (4) that the position remained open or was filled by a similarly qualified applicant

outside of the plaintiff's protected class, or that other employees who are not members of the protected class were retained under similar circumstances. McDonnell Douglas, 411 U.S. at 802-04; see also Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 318 (4th Cir. 2005); Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 188 (4th Cir. 2004); Brinkley v. Harbour Recreation Club, 180 F.3d 598, 607 (4th Cir. 1999).

If the plaintiff succeeds in establishing that prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment decision. Hux v. City of Newport News, Va., 451 F.3d 311, 314-15 (4th Cir. 2006). This is a burden of production, not of proof or persuasion, so the reasons proffered need not ultimately persuade the Court, as long as the defendant offers a legitimate and race-neutral rationale for its decision. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 509 (1993). To overcome a defendant's proffered non-discriminatory rationale, the plaintiff must prove by the preponderance of the evidence that those justifications were not the real reasons for the adverse decision, but in fact were a pretext for unlawful discrimination. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000). This third and final step "merges with the [plaintiff's] ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981).

### B. Prima Facie Case

In this case, plaintiff has not successfully made out a <u>prima facie</u> case of unlawful employment discrimination. As a threshold matter, there is no genuine dispute that plaintiff, as a native of Africa, is a member of a protected class, nor is there any dispute that she suffered adverse employment actions when she was placed on administrate leave, and later removed from her position as a Clinical Assistant and told to either resign, become an on-call greeter, or be fired. However, Ze-Ze cannot meet the third prong of the <u>McDonnell Douglas</u> <u>prima facie</u> test because she cannot establish that, at the time of those adverse employment actions, she was performing at a level that met Kaiser's legitimate business expectations.

To the contrary, throughout February 2008, the very same month in which Ze-Ze was placed on leave and eventually removed from her position, Kaiser had already received at least two complaints about Ze-Ze from patients at the Springfield Medical Center. <u>See</u> Def.'s Mot. for Summ. J. at Ex. C (Stuehler Decl.) ¶¶ 3-5. Those patient complaints alleged that Ze-Ze was providing poor customer service, that she was rude and unprofessional, and that she was not doing a good job of communicating with patients regarding delays. <u>Id.</u>; <u>see also</u> <u>id.</u> at Ex. B (Stuehler Dep.) at Ex. 5. Moreover, although plaintiff disputes the specific factual circumstances leading to those patient complaints, and further alleges that Kaiser received complaints about all of its

10

employees, see Pl.'s Resp. Opposing Def.'s Mot. for Summ. J. at 8, she cannot deny that Kaiser received complaints about her in particular, nor can she deny that she had already been placed on a Level 3 Corrective Action Plan even before February 11, 2008, the date on which she was first placed on administrative leave. See, e.g., id. at Ex. A (Ze-Ze Dep.) at Ex. 7. In light of her prior employment history, Ze-Ze therefore cannot show that she was performing at or above her employer's legitimate expectations at the time that she suffered any adverse employment action.[4]

C. Legitimate, Non-Discriminatory Justification

Moreover, even if plaintiff could somehow meet her prima facie burden under McDonnell Douglas, Kaiser has proffered an eminently valid, non-discriminatory reason for its adverse employment decisions, which plaintiff cannot adequately rebut. Specifically, Kaiser's articulated non-discriminatory reason for its actions is that Ze-Ze endangered the health and safety of a patient on February 11, 2008 by placing that ill patient alone in a closed exam room, without telling anyone that the patient was there.

---

[4] Ze-Ze points to a "thrive letter" that she received in February 2007, which commended her on her positive attitude and customer service, as evidence that she was performing at the necessary level. See Pl.'s Resp. Opposing Def.'s Mot. for Summ. J. at 8. That letter, however, pre-dates the events giving rise to this civil action by a full year, and therefore fails to create any genuine issue of material fact. Moreover, although plaintiff argues that other employees at Kaiser received patient complaints but were not disciplined as harshly as she was, there is no evidence in the record that any of those other employees were on a Corrective Action Plan at the time.

11

Courts have long recognized that such poor performance provides a legitimate basis for taking an adverse employment action, and that compromising patient safety is a valid, non-discriminatory reason for discharging an employee working in the medical profession. In Eiland v. Trinity Hospital, for example, the Seventh Circuit upheld a district court's grant of summary judgment for an employer, based upon a finding that terminating an employee because she would be a threat to patient safety if she continued in her employment was a valid, non-pretextual reason for discharge. 150 F.3d 747, 752 (7th Cir. 1998); see also Conwright v. Westinghouse Elec. Corp., 933 F.2d 231, 234-35 (4th Cir. 1991) (recognizing poor performance as a legitimate, non-discriminatory reason for taking an adverse employment action); Jenkins v. Bell S. Adver. & Publ'g Corp., No. 94-2106, 1996 WL 281958 (4th Cir. May 29, 1996) (same).

As such, on the record before the Court, there is no genuine dispute that Ze-Ze's conduct on February 11, 2008 warranted the actions taken against her.[5] Ze-Ze admits that she left a patient

---

[5] The only factual dispute that plaintiff has identified concerning the February 11, 2008 incident is whether two or three individuals from Kaiser were involved in the discovery of plaintiff's misconduct. Defendant has represented that only Stuehler and Lutes discovered the sick patient in the closed section of the Dermatology Department on that date, while "Ze-Ze testified that there were three individuals from Kaiser involved in this incident, Ms. Stuehler, Ms. Lutes, and a Ms. Mary Ward." Pl.'s Resp. Opposing Def.'s Mot. for Summ. J. at 5-6. Plaintiff, however, has not explained how that factual distinction would in any way be material to the outcome of this civil action. Indeed, whether two, three, or three hundred people discovered Ze-Ze's wrongdoing on February 11 would appear to have no bearing

unattended in a closed wing of the Dermatology Department, with the door closed, even though she knew that the patient was warm to the touch and had explicitly stated that she was not feeling well. See Def.'s Mot. for Summ. J. at Ex. A (Ze-Ze Dep.) at 57:17-58:2, 109:17-21. To make matters worse, Ze-Ze then failed to inform anyone else at Kaiser that the patient was even there. Id. at 55:6-18, 59:15-60:7 Plaintiff herself admits that "in hindsight, [she] possibly should have used better judgment" with regard to the February 11, 2008 incident. Pl.'s Resp. Opposing Def.'s Mot. for Summ. J. at 14. That is putting matters mildly. Indeed, as plaintiff's supervisor, Stuehler, explained:

> [The patient left in the exam room] could have died; she could have fallen off the exam table; she could have had a seizure, a stroke; we could have had a fire in the building and nobody would have known she was there . . .

Def.'s Mot. for Summ. J. Ex. B (Stuehler Dep.) at 25:6-11. Under these circumstances, defendant clearly had a legitimate basis, entirely unrelated to Ze-Ze's race or national origin, for removing Ze-Ze from her position as a Kaiser Clinical Assistant.

Plaintiff's only rejoinder to Kaiser's quite common-sense concerns about her dangerously deficient performance is that the February 11 incident was "isolated" and that "her intentions were well meaning in that she . . . was simply trying to help." Pl.'s

---

whatsoever on whether her conduct was sufficiently serious to warrant termination or strong disciplinary action, or on whether Kaiser's proffered neutral justification for its decision to remove Ze-Ze from her Clinical Assistant position was a pretext for unlawful discrimination.

Resp. Opposing Def.'s Mot. for Summ. J. at 14. Ze-Ze's subjective intentions, however, are irrelevant; it was her objective conduct that endangered the safety of a patient, and that objective conduct fully justified Kaiser in taking adverse employment action against her. Moreover, although the incident was "isolated" in the sense that it only occurred once, the severity of the incident and the significant lapse in judgment that Ze-Ze's conduct demonstrated provided a more than adequate basis for defendant to place her on administrative leave and request that she accept a different position or resign, to ensure that the "isolated" incident would never recur.

Finally, although plaintiff argues that this case must proceed to trial because Kaiser cannot point to a specific written policy prohibiting her conduct, her behavior was clearly contrary to her basic job duties as a Clinical Assistant, which included, at a minimum, notifying nursing or other medical staff if a patient required medical assistance. See Def.'s Mot. for Summ. J. at Ex. A (Ze-Ze Dep.) at Ex. 3. Accordingly, and particularly in light of Ze-Ze's history of other performance-related problems, her "lapse in judgment," Pl.'s Resp. Opposing Def.'s Mot. for Summ. J. at 14, and disregard for patient safety on February 11, 2008 provided a valid, non-discriminatory justification for Kaiser taking disciplinary action against her.

D. Pretext

Lastly, as a matter of law, plaintiff cannot establish any genuine issue of material fact in support of her allegation that Kaiser's proffered performance-related justification for its actions was pretextual. Plaintiff claims that her termination must have been pretextual because she was never explicitly warned that her conduct on February 11, 2008 could subject her to discipline or termination. See Pl.'s Resp. Opposing Def.'s Mot. for Summ. J. at 7, 15-16. That argument is meritless. It should have been painfully obvious to any qualified Clinical Assistant in a medical facility that an ill patient should not be left alone and unattended in an abandoned area of the clinic, particularly if no one else is aware that the patient is there. As such, contrary to plaintiff's contentions, no warning was necessary to communicate that basic fact to Ze-Ze.

Moreover, plaintiff has submitted no evidence whatsoever of racially biased statements or other conduct that would indicate racial or national origin animus on the part of Kaiser or any of her immediate supervisors. Instead, Ze-Ze merely alleges that "it is highly doubtful that another employee, particularly one outside the Plaintiff's protected class, would have been immediately subject to termination for similar conduct." Pl.'s Resp. Opposing Def.'s Mot. for Summ. J. at 17. That speculative and conclusory assertion is wholly unsupported by any evidence in the record, and it therefore cannot create a genuine dispute of material fact that

15

would allow the plaintiff's claims to survive summary judgment.

Finally, plaintiff contends that a trier of fact could reasonably find that Kaiser engaged in unlawful discrimination against her, using her poor performance as a mere pretext, because other Kaiser employees committed similar infractions and yet were not placed on administrative leave or asked to resign. Specifically, plaintiff identifies Vicki Catlin ("Catlin"), a Caucasian female, as a possible comparator, alleging that Kaiser patients complained about Catlin on several occasions, but that "[d]espite these complaints, Ms. Catlin was not disciplined, terminated, or otherwise reprimanded." Id. at 13; see also id. at 18 (arguing that "[t]here is a genuine issue about whether Mrs. Ze-Ze was treated less favorably than Ms. Catlin was").

However, in evaluating claims of discrimination based on comparisons to other employees, courts look to the relative seriousness of the plaintiff's and the purported comparator's actions, to determine whether those actions are truly similar in degree and kind. See, e.g., Moore v. City of Charlotte, N.C., 754 F.2d 1100, 1107 (4th Cir. 1985); see also Haywood v. Locke, 387 Fed. App'x 355, 359 (4th Cir. 2010) (per curiam) (holding that to prove discrimination by means of comparisons to another employee, a plaintiff must show that the alleged comparator's actions were "similar in all relevant respects"). Here, there is evidence in the record suggesting that Kaiser did receive some complaints about Catlin, and that at least one patient requested to have

16

someone else administer her medication to her instead of having Catlin administer it because the patient "wasn't confident in [Catlin's] abilities." See, e.g., Pl.'s Resp. Opposing Def.'s Mot. for Summ. J. at Ex. D (Veronica Taylor Dep.) at 17:14-18:12. As defendant properly responds, however, "that is a far cry from leaving a patient unattended in a closed exam room in a closed part of the medical center and then failing to tell anyone that the patient was there." Reply to Pl.'s Opp. to Def.'s Mot. for Summ. J. at 4-5. Accordingly, because plaintiff has not established that any other Kaiser employees received lesser punishments for sufficiently similar misconduct, her argument that her termination was pretextual fails as a matter of law.[6]

Ultimately, Ze-Ze simply cannot show "that [her] employer's proffered explanation is unworthy of credence," Reeves, 530 U.S. at 143 (quoting Burdine, 450 U.S. at 256), and no reasonable jury could find in her favor on any of the remaining Title VII allegations in her Complaint. For those reasons, defendant's

---

[6] Moreover, even to the extent that Catlin received similar complaints or similar negative assessments of her interactions with patients as did Ze-Ze on February 7 and February 8, 2011, Catlin's performance-related issues were reported to a different supervisor; specifically, Stuehler and Ward received and investigated the complaints against Ze-Ze, while the complaints against Catlin "were brought to the attention of Ms. Rudat." See Reply to Pl.'s Opp. to Def.'s Mot. for Summ. J. at Ex. A (Taylor Dep.) at 53:4-13. Because Haywood requires a showing that plaintiff and her alleged comparator "dealt with the same supervisor, [and were] subject to the same standards," 387 Fed. App'x at 359, plaintiff's pretext allegations are insufficient as a matter of law for that reason, as well.

Motion for Summary Judgment will be granted, and judgment will be entered in favor of the defendant, the Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc.

### IV. Conclusion

For the reasons stated above, defendant's Motion for Summary Judgment [Dkt. No. 32] will be GRANTED and judgment will be entered in favor of the defendant by an Order to be issued with this Memorandum Opinion.

Entered this 29th day of June, 2011.

Alexandria, Virginia

/s/ 
Leonie M. Brinkema
United States District Judge